# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MARICE S. NALLS (#423240)**                    **CIVIL ACTION**

**VERSUS**                                                      **14-734-JWD-RLB**

**N. BURL CAIN, WARDEN**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 7, 2020.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

MARICE S. NALLS (#423240)                    CIVIL ACTION

VERSUS                                       14-734-JWD-RLB

N. BURL CAIN, WARDEN

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (R. Docs. 1 and 13). The State has filed an opposition to the petitioner's application. (*See* R. Doc. 10, 11, and 35). There is no need for oral argument or for an evidentiary hearing.

On or about November 19, 2014, the *pro se* petitioner, an inmate confined at the Louisiana State Penitentiary, Angola, Louisiana, filed this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, attacking his 2009 conviction in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on one count of armed robbery and one count of aggravated rape. The petitioner asserts that the evidence was insufficient to support his convictions, the trial court erroneously denied his post-verdict motion for acquittal, the waiver of his right to a jury trial was invalid, the prosecution committed a *Brady* violation through the use of "surprise" evidence at trial, and he received ineffective assistance of counsel in several respects.

### Procedural History

On October 1, 2008, the petitioner was found guilty of one count of armed robbery and one count of aggravated rape. On January 12, 2009, the petitioner was sentenced to 15 years

imprisonment on the armed robbery conviction and was sentenced to life imprisonment on the aggravated rape conviction. The petitioner's trial counsel thereafter filed a direct appeal with the Louisiana First Circuit Court of Appeal ("First Circuit"). The petitioner's counsel sent him a letter shortly after filing the appellate brief advising the petitioner that he would no longer serve as his attorney but did not file a motion to withdraw as counsel of record with the First Circuit. The First Circuit issued an opinion on October 23, 2009 affirming the petitioner's convictions and sentences. *See State v. Nalls,* 09-072 (La. App. 1 Cir. 10/23/09), 2009 WL 3453003. The First Circuit mailed the opinion to the petitioner's counsel, who was the agent for service under La. Ct. App. Unif. R. 2-17.1, because the petitioner's counsel had never formally withdrawn. The petitioner wrote four letters to his counsel requesting a status update on his case, but his counsel never wrote back (R. Doc. 1-5, p. 13-16).

On April 25, 2011, the petitioner directly contacted the First Circuit regarding the status of his appeal (R. Doc. 1-5, p. 17-20). On April 27, 2011, the petitioner's Motion was returned to him unfiled, along with a copy of the appellate court's ruling from October of 2009. (R. Doc. 1-5, p. 24). The petitioner received these documents on April 28, 2011 (R. Doc. 1-5, p. 42). The petitioner subsequently filed an application for a supervisory writ with the Louisiana Supreme Court in July of 2011, which was denied on April 9, 2012. *See State ex rel. Nalls v. State,* 11-1489 (La. 4/9/12), 85 So.2d 137.

On or about October 11, 2011, while his writ application was pending at the Louisiana Supreme Court, the petitioner filed an application for post-conviction relief ("PCR"), asserting five claims. The trial court issued an order on October 3, 2012 dismissing all the petitioner's claims except for claim 5, ineffective assistance of counsel due to counsel's failure to file a motion to quash the armed robbery charge. The trial court dismissed claim 5 on March 15, 2013.

On November 7, 2014 the Louisiana Supreme Court granted relief in part, finding the petitioner received ineffective assistance of counsel due to his counsel's failure to file a motion to quash the armed robbery charge because it was prescribed and vacated the petitioner's sentence and conviction for armed robbery. *See State ex rel. Nalls v. State*, 13-2806 (La. 11/7/14), 152 So.3d 164.

On or about November 19, 2014, the petitioner filed the present application for habeas relief. On March 24, 2015, the petitioner filed *Supplement to Habeas Corpus Ineffective Assistance of Counsel Claim* (R. Doc. 13). On November 7, 2017, a Report and Recommendations was issued, recommending that the petitioner's application be dismissed as untimely. On December 6, 2017 the Court adopted the Report and Recommendations and dismissed the petitioner's application. On August 3, 2018 the Fifth Circuit granted the petitioner a certificate of appealability on the issue of whether equitable tolling was warranted (R. Doc. 27). On January 8, 2020, the Fifth Circuit issued an opinion finding that the petitioner's circumstances warranted equitable tolling, reversed the dismissal of the petitioner's application as untimely, and remanded to this Court for further proceedings.

## Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a

conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id. See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## Factual Background

The facts, as accurately summarized in the decision of the Louisiana First Circuit Court of Appeal are as follows: In September 1998, M.C. was living with Ronnie Burgess in unit 12 of the Warren House Apartments located off Airline Highway in Baton Rouge. On the morning of September 24, 1998, Burgess left for work at approximately 5:00 a.m. M.C. locked the door to the apartment and returned to the bedroom. Once inside the bedroom, M.C. heard the door to the apartment unlock. Thinking that Burgess had returned to retrieve something, M.C. opened the bedroom door and saw a man armed with a handgun standing in the living room.

When M.C. saw the man, she quickly stepped behind the bedroom door. However, the gunman entered the bedroom, placed the gun to her head and demanded money. He then asked

M.C. where the man he had previously seen in the apartment had gone, and when she denied that a man had been there, the gunman informed her that he had been in the apartment earlier that morning.

The gunman then ordered M.C. to take off her clothing and get on the bed. M.C. pleaded with the gunman to take whatever money she had and leave; however, the gunman repeatedly told M.C. to "shut up." The gunman held the weapon to M.C.'s temple as she lay on the bed. He ordered her not to look at him, so she turned her head and closed her eyes as the gunman proceeded to vaginally and rectally rape her. The gunman stated he wanted M.C. to perform oral sex on him; however, she explained it would make her sick. The gunman then resumed raping M.C.

According to M.C, the gunman grew agitated, ceased raping her and she heard him cock the hammer of the weapon, then release the hammer, commenting that she "wasn't worth his time." While still holding the gun to M.C.'s head, the gunman forced her into the living room to retrieve her purse. As M.C. entered the living room, she noticed that the television was no longer there, and she was unable to locate her purse. After the search for her purse was unsuccessful, the gunman ordered M.C. to get on her hands and knees in the living room where he resumed raping her.

M.C. testified that after an estimated forty-five minutes of being raped, she heard a voice calling out through the apartment door, which had been left slightly open, "Marice, come on. You're so stupid. Come on. Let's go." As the person called out to the gunman, he continued raping her. After more time passed, the gunman ceased raping M.C. and told her to go into the bedroom, shut the door, and not leave or he would kill her. The gunman also stated that she should not call the police.

M.C. immediately complied with the gunman's orders, and then waited a few minutes after she heard the apartment door close to make sure she was alone before calling Burgess to tell him she had been raped. She asked Burgess to meet her at the hospital, located her keys, and drove herself to Woman's Hospital.

After arriving at Woman's Hospital, M.C. reported that she had been raped and the police were notified. Sergeant Kevin Paul of the Baton Rouge City Police was dispatched to the hospital at 6:44 a.m. in response to the complaint. Because M.C. had kept her eyes closed during the rapes, she was unable to provide a detailed description of her attacker. M.C. could only describe him as a black male in his twenties, with a thin build and thick eyebrows. M.C. told the police that the assailant might live at the Ten Flags Motel located near the Warren House Apartments based on his statements that he would be watching her.

While at Woman's Hospital, M.C. underwent a rape examination performed by Dr. Sterling Sightler. Dr. Sightler testified that M.C. reported she had consensual sex the previous evening at approximately 9:00 p.m. In completing the rape examination, Dr. Sightler took a series of specimens including pubic hair clippings, vaginal swabs, and a swab of one of M.C.'s breasts, where the assailant had placed his mouth during the rape. M.C. and Burgess also submitted blood samples in conjunction with the rape examination.

Several days following the rape, M.C received a call from an unidentified male explaining that he had found her checkbook and credit cards in a field. M.C. contacted the police and reported the information. The police responded to the location of North Acadian and North Thirty–Third Street and recovered the items.

In 1998, Joseph Brisolara was working as a serologist for the Louisiana State Police (LSP) Crime Lab. Brisolara received several items of evidence related to this matter. Brisolara

testified that he conducted tests that detected seminal fluid on M.C.'s shirt, underwear, the comforter from her bedroom, and vaginal washings.

The investigation produced no suspects. Meanwhile, the petitioner was convicted of various crimes committed in 1999, including carnal knowledge of a juvenile, attempted possession of cocaine, and misdemeanor theft. On June 8, 2000, the petitioner was ordered to submit a DNA sample to the Combined DNA Index System (CODIS) of the LSP Crime Lab.

In 2003, the LSP had grant funding for DNA analysis of backlogged evidence. In December 2003, Courtney Tourre, who was working as a DNA analyst with the LSP Crime Lab, packaged the vaginal swab and blood cards taken from M.C. and Burgess's samples and sent them to Bode Technology Group, a forensic DNA laboratory in Springfield, Virginia. Pursuant to the grant, Bode Technology Group was hired to assist the LSP in examining DNA evidence.

The vaginal swab and blood profiles in this case were examined by Susan Bach of Bode Technology Group. Bach was accepted by the trial court as an expert in DNA analysis and forensic science. Bach performed testing on M.C.'s vaginal swab and compared the results to the reference sample of M.C. and Burgess. The DNA profile taken from the semen on the vaginal swab eliminated Burgess as the source of the semen.

Less than a year later, the DNA profile from the vaginal swab developed by Bode Technology Group was entered into the CODIS database and Janaki Vaidyanathan, the state administrator of CODIS and the DNA supervisor for the LSP Crime Lab, notified the Baton Rouge City Police that the DNA profile taken from the vaginal swab in the instant case matched one of the profiles in the CODIS database. The match was identified as belonging to the petitioner. Based on this information, an arrest warrant was prepared for the petitioner. Following the petitioner's arrest on June 19, 2007, another DNA sample was collected from him.

Alyson Saadi, who was accepted by the trial court as an expert in DNA testing, examined the reference DNA sample collected from the petitioner for the LSP Crime Lab. Saadi used the report from Bode Technology of the DNA profile of the semen deposit taken from M.C.'s vaginal swab and compared that profile to the reference sample taken from the petitioner following his arrest. Saadi concluded that the probability of obtaining the same DNA profile from anyone other than the petitioner was one in 57.8 billion.

The petitioner testified at trial and acknowledged his previous convictions. For each conviction, the petitioner offered an exonerating explanation. For his conviction of carnal knowledge of a juvenile, the petitioner claimed that the victim had lied about her age; for his attempted possession of cocaine conviction, the petitioner claimed an acquaintance had actually purchased the cocaine; and for the misdemeanor theft conviction, the petitioner again claimed his conviction was the result of the actions of others.

Regarding the instant offense, the petitioner testified he had no recollection of ever meeting M.C. The petitioner explained that in 1998, he worked at a Waffle House on Airline Highway, in the vicinity of the Ten Flags Motel, which he would frequent to obtain marijuana. The petitioner claimed that during his visits to the Ten Flags Motel, he would engage in casual consensual sex with women, one of whom was a Caucasian woman. The Ten Flags Motel is located near the Warren House Apartments. The petitioner denied ever going to the Warren House Apartments and denied ever raping any woman. The petitioner maintained that his DNA was found on M.C.'s vaginal swab because they had engaged in consensual sex.

The State called M.C. as a rebuttal witness. M.C. denied ever going to the Ten Flags Motel and engaging in sexual relations, prostitution, or drug use. In finding the petitioner guilty of both offenses, the trial court noted that the case rested on a credibility determination, and that

it found M.C.'s version of events more credible. *State v. Nalls*, 2009-0772 (La. App. 1 Cir. 10/23/09), 2009 WL 3453003.

### Claim 1: Sufficiency of the Evidence-Aggravated Rape & Claim 3: Trial Court Erred in Denying Post Verdict Motion for Acquittal

In Claim 1 the petitioner contends that the state presented insufficient evidence to convict him of the crime of aggravated rape. He asserts that the victim's testimony lacked credibility, there was no evidence that corroborated her testimony, and there was no evidence that the victim "resisted to the utmost." The petitioner brought this claim in his direct appeal to the First Circuit.

The First Circuit reviewed the standard for sufficiency of evidence set forth in *Jackson v. Virginia*, 433 U.S. 307 (1979), and found that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt:

> A conviction based on insufficient evidence cannot stand as it violates due process. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) …

> At the time of the instant offense, the applicable provision of La. R.S. 14:42 provided in pertinent part:

> A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
> ....
> (3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.

> Louisiana Revised Statutes 14:41(A) provided at the time of the offense that "[r]ape is the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent."

Viewing the evidence in the light most favorable to the prosecution, the State established that on the morning of September 24, 1998, M.C. was raped by a black male. M.C. testified that because she had her head turned and eyes closed during the encounter, she could not provide an accurate description of her assailant to the police. However, during the incident, M.C. did hear another man address her assailant as "Marice," which is the defendant's name. Further, defendant admitted to working in the vicinity of M.C.'s apartment at the time of the rape. Defendant also claimed he could have had consensual sex with M.C. at the Ten Flags Motel during one of the episodes where he obtained marijuana from that location. However, M.C. testified that she never went to the Ten Flags Motel.

The State also established that the vaginal swab of M.C. taken a short time after the rape had semen present. M.C.'s boyfriend, Burgess, was ruled out as the source of this semen. Eventually, defendant's DNA profile was found to match the DNA profile taken from M.C.'s vaginal swab.

When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. The testimony of the victim alone is sufficient to prove the elements of the offense. The testimonial evidence was sufficient to establish the elements of aggravated rape, specifically the element of penetration. Louisiana Revised Statutes 14:41(B) provides that "[e]mission is not necessary" and that "any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime." The victim's testimony also establishes the additional element of aggravated rape that she was prevented from resisting the act because her attacker was armed with a gun.

In finding the defendant guilty of aggravated rape, the trial court accepted that the defendant's DNA found on M.C.'s vaginal swab established that they had engaged in sexual intercourse. The trial court also found M.C.'s testimony that she had not consented to sexual intercourse, but had been raped at gunpoint, to be more credible than defendant's testimony that the two had engaged in consensual sexual relations at a location near M.C.'s apartment.

Accordingly, the evidence sufficiently supports defendant's conviction for aggravated rape…

*State v. Nalls*, 2009-0772 (La. App. 1 Cir. 10/23/09), 2009 WL 3453003 (*internal citations omitted*).

The habeas court must defer to the trial court's findings on issues of conflicting testimony and the weight of the evidence, resolving all conflicting inferences and credibility choices in favor of the verdict and may not substitute its judgment for that of the factfinder's. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). Thus, under the standards of *Jackson* and § 2254, this Court's review on sufficiency of evidence claims is "twice-deferential." *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Considering this standard, the petitioner's contention that he is entitled to habeas relief because the victim's testimony lacked credibility or corroboration is without merit. Furthermore, contrary to the petitioner's assertions, the prosecution did not have to prove that the victim "resisted to the utmost." According to the statute, one alternative circumstance of aggravated rape occurs "when the victim resists the act to the utmost, but whose resistance is overcome by force." LSA-RS 14:42 A(1). However, as noted by the First Circuit, the prosecution proved the circumstance of aggravated rape enumerated in 14:42 A(3): "when the victim is prevented from resisting the act because the offender is armed with a dangerous weapon." The First Circuit's decision on sufficiency of the evidence was neither contrary to, nor an unreasonable application of federal law. Accordingly, the petitioner is not entitled to habeas relief on Claim 1.

Petitioner also argues in Claim 3 that the trial court erred in not granting a motion for post-verdict judgment of acquittal based on an insufficiency of the evidence theory. The petitioner argues that the trial court failed to follow the appropriate Louisiana standard in assessing sufficiency of the evidence. It is not the role of this Court to consider whether Louisiana appropriately applied Louisiana law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68

(1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") Our concern lies solely with whether the state courts' decision was contrary to or an unreasonable application of federal law. Considering the conclusion above on the federal standard for sufficiency of the evidence, Claim 3 is also without merit and should be dismissed.

### Claim 2: Sufficiency of the Evidence- Armed Robbery

In Claim 2 the petitioner contends that the state failed to prove beyond a reasonable doubt that he was guilty of the crime of armed robbery. As discussed above, the Louisiana Supreme Court vacated the petitioner's conviction for armed robbery upon review of his post-conviction application, finding that the petitioner received ineffective assistance of counsel when his trial counsel failed to file a motion to quash the indictment for armed robbery:

> Writ granted in part; otherwise denied. Given that the time limitations for instituting prosecution on the armed robbery count had prescribed, relator's trial counsel rendered ineffective assistance when he failed to file a motion to quash on that basis. See La.C.Cr.P. art. 572(A)(1); R.S. 14:64(B); La.C.Cr.P. art. 532(7). *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Washington,* 491 So.2d 1337 (La.1986). The application is therefore granted for the sole purpose of vacating relator's armed robbery conviction and sentence.

*State ex rel. Nalls v. State*, 2013-2806 (La. 11/7/14), 152 So. 3d 164.

"To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision. *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990). If a dispute ends or has otherwise been resolved, it becomes moot. *American Medical Ass'n v. Bowen,* 857 F.2d 267, 270-271 (5th Cir. 1988). The petitioner received the relief sought on this claim when the Louisiana Supreme Court vacated his conviction for armed robbery on November 7, 2014. Accordingly, Claim 2 should be dismissed as moot.

*Claim 4: Invalid Jury Waiver*

In Claim 4 the petitioner contends that he did not validly waive his right to a jury trial.

The petitioner brought this claim on direct appeal to the First Circuit. The First Circuit reviewed

the record and determined that the petitioner knowingly and voluntarily waived his right to a

jury:

> Both the United States Constitution and the Louisiana Constitution expressly guarantee a criminal defendant the right to a jury trial. U.S. Const. amend. VI; La. Const. art. I, §§ 16, 17. However, some criminal defendants may, pursuant to statute, waive this constitutionally guaranteed right provided the waiver of the right is knowingly and intelligently made. La. C. Cr. P. art. 780(A); *State v. Allen,* 05–1622, p. 7 (La. App. 1st Cir.3/29/06), 934 So.2d 146, 154.
>
> . . .
>
> In the present case, defendant asserts the minute entries indicate his trial counsel filed a motion requesting a bench trial, but defendant argues, in pro se brief, that his counsel never discussed the motion with him.
>
> We note that the minute entry for September 29, 2008 indicates only that defendant "waived his rights to a jury trial." The transcript of that date was not included in the original record; however, pursuant to an order of this court, the record was supplemented with that transcript. The transcript of the September 29, 2008 proceedings indicates that the trial court conducted a colloquy with defendant and ascertained that defendant understood what he was charged with and that if convicted, he would face a term of life in prison. The transcript reflects the trial court also explained that defendant had the right to a twelve-person jury, ten of whom had to vote to convict him. The trial court informed defendant he had a right to proceed to trial before jury, unless he wished to waive that right, to which defendant responded that he did. The trial court went on to ascertain that defendant was a high school graduate who could read, write, and understand English. Finally, the trial court questioned defendant whether anyone was forcing him to give up his right to go to trial by jury, and defendant responded, "No, sir." Based on that colloquy, the trial court found defendant had knowingly and intelligently waived his right to a jury trial.

> After reviewing the September 29, 2008 transcript, we find the trial court apprised defendant of his right to a trial by jury and his right to waive such trial. The record indicates defendant knowingly, intelligently, and voluntarily waived that right.

*State v. Nalls*, 2009-0772 (La. App. 1 Cir. 10/23/09), 2009 WL 3453003.

The right to a jury trial in a criminal case is a fundamental constitutional right. *Duncan v. Louisiana,* 391 U.S. 145,157–58 (1968). That right may be waived by the defendant, but the waiver must be express and intelligently made. *See Singer v. United States,* 380 U.S. 24, 34 (1965). Whether "there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." *Adams v. United States ex rel. McCann,* 317 U.S. 269, 278 (1942). "The record must show, or there must be an allegation and evidence which show, that [the waiver was] intelligently and understandingly [made]." *Boykin v. Alabama,* 395 U.S. at 238, 242 (1969).

The record contradicts the petitioner's claim that he did not knowingly and voluntarily waive his right to a trial by jury. As noted by the First Circuit, on September 29, 2008 in a hearing on the record, the trial judge questioned the petitioner about his right to a jury trial. The petitioner stated that he understood that his charge carried a sentence of life imprisonment, that he had the right to a jury of twelve persons from the community, and that if he waived his right to a jury that the judge alone would decide whether he was guilty or not guilty.[1] The trial judge confirmed that the petitioner was a high school graduate and was not being forced by anyone to waive his right to a jury.[2] Because the record shows that the waiver was "intelligently and understandingly made," the state court's dismissal of this claim is neither contrary to nor an unreasonable application of federal law. Claim 4 is without merit and should be dismissed.

---

[1] Trial Court Record, pp. 509-510.
[2] Trial Court Record, pp. 509-510.

***Claim 5: Brady Violation/Surprise Evidence***

In Claim 5 the petitioner contends that the state committed a violation of *Brady v. Maryland,* 373 U.S. 83 (1963), when it failed to disclose the following evidence in advance of trial: picture evidence, statement of treatment by an unknown doctor, rape kit, credit cards, & checkbook. The petitioner argued this issue as an assignment of error in his direct appeal to the First Circuit. The petitioner argued to the First Circuit that he was "broadsided" by the introduction of these evidentiary items at trial to which he had never been made aware. The First Circuit found that contention to be contradicted by the record, which showed that the state provided answers to discovery eight months before trial listing these items as intended exhibits at trial and making them available to the defense for inspection prior to trial.[3]

"[T]he suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Banks v. Dretke,* 540 U.S. 668, 691(2004) (*quoting Brady,* 373 U.S. at 87). To prevail on a *Brady* claim, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). Evidence is material where there exists a "reasonable probability" that had it been disclosed the result at trial would have been different. *Banks v. Dretke,* 540 U.S. 668, 699 (2004). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682 (1985).

Here, as noted by the First Circuit, the record demonstrates that the evidence at issue was made available to the defense and was not suppressed by the state. Furthermore, the petitioner

---

[3] Trial Court Record, pp. 213-214

has failed to identify how this evidence was exculpatory. Accordingly, no *Brady* violation occurred, and the state courts' decision dismissing this claim was neither contrary to nor an unreasonable application of federal law.

### *Claims 6-11: Ineffective Assistance of Counsel*

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show that his counsel's performance was both deficient (that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (that errors by counsel "actually had an adverse effect on the defense"). *See Anderson v. Collins*, 18 F.3d 1208, 1215 (5th Cir. 1994) (*citing Strickland*, 466 U.S. at 686-89, 693). The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *See Anderson*, 18 F.3d at 1215 (*citing Strickland*, 466 U.S. at 689). As to the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Rather, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Anderson*, 18 F.3d at 1215 (*citing Strickland*, 466 U.S. at 693).

A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. *See Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 689). The challenger's burden is to show that counsel made errors so serious that counsel was not

functioning as the counsel guaranteed by the Sixth Amendment. *See Richter*, 562 U.S. at 104 (*citing Strickland*, 466 U.S. at 687).

### Claim (6) Failure Retain Expert(s)

In Claim 6 the petitioner contends that his trial counsel was ineffective for failing to engage expert(s) to provide testimony on DNA, the victim's injuries, the inaccurate description of the perpetrator given to police sketch artist, the photographic evidence at trial, "opinion evidence," and "other reasonable hypothesis of innocence." The petitioner asserted this claim in his application for post-conviction relief. The state courts dismissed the claim for lack of merit.

Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. *See Woodfox v. Cain,* 609 F.3d 774, 808 (5th Cir. 2010). Thus, petitioners making claims of ineffective assistance based on the failure to call a witness must demonstrate prejudice by "nam[ing] the witness, demonstrat[ing] that the witness was available to testify and would have done so, set[ting] out the content of the witness's proposed testimony, and show[ing] that the testimony would have been favorable to a particular defense." *Woodfox,* 609 F.3d at 808 (*quoting Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009)). This requirement applies to both lay and expert uncalled witnesses. *Id.*

The petitioner offers only speculation that a DNA expert could have offered testimony that the spermatozoa that matched his DNA was non-motile and that fact would have supported the timeline for his assertion of consensual sex with the victim the night before the rape. The petitioner fails to identify any expert(s) who would have been willing to offer this testimony at his trial. The petitioner also fails to show how this speculative testimony would have changed the outcome of the trial. The petitioner testified at trial that he does not specifically recall the victim,

but explained that he believed his DNA was found in her vagina because around the time of the

rape he was having consensual sex with white female sex workers at the motel adjacent to the

victim's apartment complex.[4] On rebuttal, the victim testified that she had never been at the

motel with the petitioner, did not know the petitioner, and had never engaged in prostitution.[5]

As pointed out by the state court in its opinion dismissing the petitioner's application for

post-conviction relief, the petitioner's assertion that an expert would have testified that non-

motile sperm proved that the sex between him and the victim occurred sometime before the

timeframe of the rape is pure speculation. As also pointed out by the state court, the trier of fact

was made aware of the possible significance of the motile sperm as opposed to the non-motile

sperm by through the defense cross-examination of the state's expert. Furthermore, as stated by

the First Circuit in its opinion affirming the petitioner's conviction, the trial court noted that the

case rested on a credibility determination, finding the victim's version of events more credible. It

is unlikely that expert testimony regarding the timing of the ejaculation of the spermatozoa

would have changed the trier of fact's determination that the victim's testimony was more

credible than the petitioner's testimony.

With respect to the remaining experts the petitioner claims his counsel should have hired,

the petitioner fails to identify any experts that were willing to offer testimony, fails to provide

any detail about what the proposed testimony would have been, and fails to demonstrate how this

testimony would have changed the outcome of his trial. Under *Strickland*, the Court presumes

that counsel's decision to forgo calling any experts to testify was a sound strategy choice.

Petitioner has failed to overcome that presumption. Petitioner has also failed to show how the

---

[4] Trial Court Record, pp. 456-463.
[5] Trial Court Record, p. 466.

failure to call the mentioned experts would have changed the outcome of the trial. Accordingly, Claim 6 is without merit and should be dismissed.

### Claim (7) Failure to Call Witnesses

In Claim 7 the petitioner contends that his trial counsel was ineffective for failing to call Jessie Straughter or Sergeant Luttrell[6] to the stand to testify at trial. Sergeant Luttrell was one of the lead detectives on the case, but was deceased by the time of trial.[7] During trial, Sergeant Lynn Ferguson testified that the victim's property was by found by Jessie Straughter at North Acadian and Thirty Third.[8] The petitioner's counsel objected to Sergeant Ferguson's testimony regarding where the property was found on hearsay grounds.[9] After the state's initial attempts to enter the evidence of the location of the property failed, Sergeant Ferguson was allowed to use her report to refresh her memory of where the property was found.[10] On cross-examination, Sergeant Ferguson testified that she did not have any personal knowledge of who found the property or where it was found and she never spoke to Jessie Straughter. Sergeant Ferguson learned this information from a telephone call with the victim.[11]

The petitioner contends that both Straughter and Officer Luttrell were material witnesses and his counsel was ineffective for failing to interview theses witnesses or call them at trial. He also contends that Sergeant Ferguson's hearsay testimony about what Straughter said about the purse resulted in a violation of his rights under the Confrontation Clause and his attorney was

---

[6] The petitioner identifies this officer as "Katrel" in his petition. Sergeant Ferguson refers to the officer as both "Katrell" and "Luttrell" during his testimony. For the purpose of consistency, this officer will be referred to as "Lutrell" in the opinion.
[7] Trial Court Record, p. 375.
[8] Trial Court Record, p. 379.
[9] Trial Court Record, pp. 376, 377, 378.
[10] Trial Court Record, p. 378.
[11] Trial Court Record, p. 380.

ineffective for failing to raise this objection. The petitioner raised this claim in his petition for

post-conviction relief. The state court dismissed the claim:

> At the outset, I note that the record shows that Counsel did object to Ferguson's testimony regarding Straughter as hearsay so that claim is belied by the record itself. Thus, the record contradicts the Petitioner's claim that counsel was deficient for allowing hearsay. I note further that the Petitioner does not particularly identify any statement of [Luttrell] or Straughter that was erroneously admitted or indicate how any such statement might have influenced the verdict…

> As for the complaint that counsel was deficient for not calling Straughter as a witness for the defense, there are no facts alleged to support a finding that Straughter's testimony would have been helpful or even useful. The Petitioner suggests that his testimony *might* have revealed a "set up." However, there is neither indication in the record, nor any facts alleged that would indicate a conspiracy existed, nor that the witness would have supported such a theory. Speculation is insufficient to support this claim that the Petitioner's constitutional right was violated by not calling Mr. Straughter.

As noted by the state court, the petitioner's counsel did object to the state's attempts to elicit

hearsay testimony from Sergeant Ferguson about what Jessie Straughter said about the property.

Accordingly, his claim regarding ineffective assistance of counsel due to his counsel's failure to

object is contradicted by the record.

With respect to the petitioner's claim that Straughter and Sergeant Lutrell should have

been called as witnesses for the defense, as discussed above, petitioners making claims of

ineffective assistance based on the failure to call a witness must demonstrate prejudice by

"nam[ing] the witness, demonstrat[ing] that the witness was available to testify and would have

done so, set[ting] out the content of the witness's proposed testimony, and show[ing] that the

testimony would have been favorable to a particular defense." *Woodfox,* 609 F.3d at 808

(*quoting Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009)). The Court notes that it would

have been impossible for the petitioner's counsel to call Sergeant Luttrell to testify as a witness

for the defense because he was deceased at the time of trial. In any event, the petitioner cannot demonstrate the content of the proposed testimony or make the requisite showing that the testimony would have been favorable to his defense. The petitioner offers only speculation that these witnesses' testimony could have revealed a "set-up." The petitioner's bald and unsupported speculation that Jessie Straughter might have admitted to a conspiracy to set him up for criminal charges if he had been called as a witness at trial is insufficient to support a claim that his constitutional right to effective assistance of counsel was violated.

### Claim (8) Failure of Counsel to Notify Court he had Withdrawn

In Claim 8 the petitioner argues that his attorney rendered ineffective assistance of counsel during his direct appeal. As discussed above, the petitioner sought an appeal on the issue of equitable tolling and was granted relief by the Fifth Circuit. The Fifth Circuit found that the petitioner's counsel's failure to forward the First Circuit's decision affirming his conviction constituted an "extraordinary circumstance" that warranted equitable tolling. *See Nalls v. Vannoy*, 797 Fed. Appx. 848 (5th Cir. 2020). To the extent the petitioner is requesting equitable tolling in Claim 8, the relief requested has been granted.

To the extent the petitioner is seeking habeas relief in Claim 8, habeas relief is not warranted. The petitioner contends that his appellate counsel was ineffective because he failed to forward the First Circuit's decision affirming the petitioner's conviction to the petitioner at Louisiana State Penitentiary. The petitioner contends that his counsel notified him that he was no longer serving as his attorney, but never formally withdrew from representation with the First Circuit. Additionally, the petitioner's counsel failed to respond to multiple letters requesting a status update on his case. The petitioner raised this claim in his application for post-conviction relief. The state court dismissed the claim, noting that the petitioner did not have any

constitutional right to a review of his case by the Louisiana Supreme Court and he failed to show that he suffered any prejudice due to the alleged deficiencies in his counsel's post-appeal performance.

When the petitioner challenges the performance of his appellate counsel, he must show that with effective counsel, there was a reasonable probability that he would have won on appeal. *Moreno v. Dretke*, 450 F.3d 158, 168 (5th Cir. 2006). Here, counsel's errors bore no relationship to the success of the petitioner's appeal on the merits. Indeed, the complained-of errors occurred *after* the First Circuit had already reviewed the arguments on appeal and rendered its decision affirming the petitioner's conviction. It is unclear whether the Louisiana Supreme Court denied the petitioner's writ application on direct appeal because it was untimely.[12] Nevertheless, as discussed at length above, the petitioner has failed to show that any of the issues that were raised on appeal (Claims 1-5) were meritorious and would have been successful had the Louisiana Supreme Court granted certiorari.[13] As such, Claim 8 is without merit and should be dismissed.

### *Claim (9) Failure to Argue Defects in Indictment*

In Claim 9 the petitioner contends that his trial counsel was ineffective because he failed to argue that defects in the indictment subjected him to double jeopardy. Particularly, the petitioner complains that the state proceeded under 2 alternative theories of aggravated rape found in §§ A(2) and A(3) of La. Stat. Ann. § 14:42, which at time read:[14]

> A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual

---

[12] The petitioner filed a "Motion for Leave for an Out-of-Time Application for Certiorari or Review" with the Louisiana Supreme Court. The order from the Louisiana Supreme Court denying the petitioner's writ states, "Writ Denied," without any indication of whether the denial was based on the timeliness of the application. *See State ex. rel. Marice S. Nalls v. State*, 2011-1489 (La. 4/9/12), 85 So.3d 137.

[13] The appeal argument on Claim 2 was sufficiency of the evidence on the armed robbery conviction. This conviction was ultimately vacated by the Louisiana Supreme Court on review of the petitioner's application for post-conviction relief – ineffective assistance of counsel for failing to move to quash the armed robbery indictment.

[14] La. Stat. Ann. § 14:42 was labeled "Aggravated Rape" until August 1, 2015 when the statute was amended to "First Degree Rape."

intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.

(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.

The petitioner raised this claim in his application for post-conviction relief. The state court dismissed the claim, finding that the petitioner was charged with a single count of rape and the state could proceed under alternative theories of aggravated rape found in La. Stat. Ann. § 14:42.[15]

A double jeopardy violation occurs when the defendant is charged with an offense that requires the same elements, and no more, as another charged offense. *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The petitioner was not charged with two offenses with identical elements. The indictment, issued on July 26, 2007, charged the petitioner with a single count of aggravated rape under La. Stat. Ann. § 14:42.[16] At trial, the state argued that the petitioner could be found guilty of aggravated rape under §A(2) of the statute because "the victim [was] prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution" or under §A(3) of the statute because "the victim was prevented from resisting the act because the offender was armed with a dangerous weapon." The petitioner was not subject to double jeopardy because he was charged and convicted of a single count of aggravated rape; not two crimes with identical elements. Accordingly, the state

---

[15] The petitioner also complains that the prosecutor argued to the judge that he was a principle to armed robbery. The Court has pretermitted any discussion of this part of the petitioner's argument, as petitioner's armed robbery conviction was vacated by the Louisiana Supreme Court.
[16] Trial Court Record, p. 10.

court's conclusion that the petitioner's counsel was not ineffective for failing to advance a meritless double jeopardy argument was neither contrary to nor an unreasonable application of federal law.

### Claim (10) Failure to Argue Statute of Limitations on Aggravated Rape Charge

In Claim 10 the petitioner contends that his counsel was ineffective for failing to argue that the statute of limitations had expired on the aggravated rape charge. The petitioner argues that the crime of aggravated rape is a non-capital crime subject to a 6-year prescriptive period under La. C. Cr. P. art. 572, which expired because he was prosecuted more than ten years after the crime was committed. The petitioner raised this claim in his application for post-conviction relief. The claim was dismissed by the state court, which found that there was no prescriptive period on the crime of aggravated rape under La. C. Cr. P Art. 571.

Section D(1) of La. Stat. Ann. § 14:42 sets forth the penalty for a conviction of aggravated rape:

> Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

La. C. Cr. P. art 571 governs when a prosecution can be instituted for aggravated rape:

> There is no time limitation upon the institution of prosecution for any crime for which the punishment may be death or life imprisonment or for the crime of forcible rape (R.S. 14:42.1).

Contrary to the petitioner's assertion, there was no time limitation for the state to prosecute him for aggravated rape. The petitioner's counsel was not ineffective for failing to assert a futile argument. Claim 10 is without merit and should be dismissed.

### Claim (11) Failure to Ensure Judge Adhered to Reasonable Doubt Standard

In Claim 11 the petitioner contends he received ineffective assistance of counsel because his counsel failed to ensure that the trial judge adhered to the reasonable doubt standard. Labeled

as an ineffective assistance of counsel claim, Claim 11 repeats the sufficiency of the evidence arguments made in Claim 1. The petitioner's argument concentrates on what he describes as credibility problems in the victim's testimony and argues that his counsel should have made sure that the trial judge properly adhered to the reasonable doubt standard by rejecting the victim's version of events and accepting his defense of consensual sex. In responding to this claim in his post-conviction application, the state court cited to the First Circuit's opinion on sufficiency of the evidence, noted that credibility determinations belong to the trier of fact, and dismissed the claim.

The First Circuit determined that the evidence presented at trial met the *Jackson* standard for sufficiency of the evidence by proving every element of aggravated rape beyond a reasonable doubt. As discussed above in Claim 1, this conclusion was neither contrary to nor an unreasonable application of federal law. Thus, the underlying factual basis of Claim 11, the petitioner's allegation that the trial judge disregarded the reasonable doubt standard, is without merit. Therefore, petitioner's claim that his counsel was ineffective because he failed to "ensure that the trial judge complied with the reasonable doubt standard" fails.

In any event, the first prong of the *Strickland* standard requires the petitioner show that his counsel's performance was deficient according to prevailing professional norms; it does not require superhuman feats of lawyering. *Strickland* does not require counsel to somehow warrant that the trier of fact will accept the defense theory of the of the case or reject the credibility of a witness. The petitioner has failed to demonstrate that his counsel's performance was deficient and Claim 11 should be dismissed.

### *Additional Claim in R. Doc. 13*

In R. Doc. 13, *Supplement to Habeas Corpus Ineffective Assistance of Counsel Claim*, the petitioner provides additional argument for Claim 9 and Claim 10. The petitioner also raises a claim that was not included in his additional habeas petition. He argues that his trial counsel was ineffective because evidence of the prescribed armed robbery charge was presented to the "jury." This argument does not appear in the petitioner's application for post-conviction relief. However, the state court record seems to be incomplete and it appears that the petitioner presented this argument to the trial court at some point during his post-conviction review proceedings,[17] as the state court addressed the argument when dismissing the petitioner's Claim 5:

> However, the Petitioner does not seek to raise the issue of prescription in his instant application for post-conviction relief, nor does he suggest that he was prejudiced because he was sentenced to a concurrent 15-year sentence on the armed robbery charge.[18] Rather, he claims, that counsel's failure to challenge the armed robbery charge allowed the jury to consider evidence of the armed robbery charge in connection with the aggravated rape charge.
>
> His allegations, however, are insufficient to establish deficient performance and prejudice. As indicated in the decision rendered on the Petitioner's direct appeal, the evidence supported the Petitioner's conviction for aggravated rape.
>
> "In finding the defendant guilty of aggravated rape, the trial court accepted that the defendant's DNA found on M.C.'s vaginal swab established that they had engaged in sexual intercourse. The trial court also found M.C.'s testimony that she had not consented to sexual intercourse, but had been raped at gunpoint, to be more credible than defendant's testimony that the two had engaged in consensual sexual relations at a location near M.C.'s apartment."

---

[17] Retained counsel, Cate Bartholomew, enrolled on behalf of the petitioner before the Commissioner's Recommendation on Claim 5 was issued on 1/31/13. However, the record contains no briefs filed by counsel.

[18] The Court notes that the petitioner labeled Claim 5 of his post-conviction application "Trial Counsel Rendered Ineffective Assistance by Failing to Argue that the Statute of Limitations on the Institution of Prosecution had Expired. Appellate Counsel Failed to Argue on Appeal." In the body of the argument, the petitioner faults his counsel for failing to argue the time limitations on both of his charges.

> Despite that the Petitioner complains that counsel's alleged failure allowed the **jury** to consider inadmissible evidence, the Petitioner waived his right to a jury and elected to be tried by the judge. There is nothing to indicate any error in admitting evidence pertaining to the armed robbery influenced the verdict on the aggravated rape charge. Therefore, even allowing for the possibility that counsel's performance was somehow deficient for failing to challenge the armed robbery charge, the Petitioner fails to show how he may have been prejudiced as a result of the alleged deficiency.

As noted by the trial court, the petitioner's case was tried to a judge, not a jury. Generally, when reviewing a judge's decision in a bench trial, a reviewing court presumes that "[t]he prejudicial impact of erroneously admitted evidence ... [is] substantially less than it might have been in a jury trial." *United States v. Cardenas,* 9 F.3d 1139, 1156 (5th Cir. 1993). Presumed to know the law, "a judge, sitting as a trier of fact, is [also] presumed to have rested his verdict only on the admissible evidence before him and to have disregarded that which is inadmissible." *Id.* Thus, "[a]ny error the judge makes in admitting evidence is ... harmless if there exists other admissible evidence sufficient to support the conviction." *Id.*

To prove that he was prejudiced by his counsel's failure to object, the petitioner must prove that there is a reasonable probability that but for his counsel's error the result of his trial would have been different. *Strickland,* 466 U.S. at 693. In other words, the petitioner must prove that, but for counsel's deficiencies, there is a reasonable probability that the trier of fact would have reached a different decision. Since the trier of fact in the petitioner's trial was a judge, the petitioner must establish a reasonable probability that, but for his counsel's failure to object, the judge would have reached a different decision.

The petitioner does not identify exactly what evidence was erroneously introduced at trial in connection with the armed robbery charge, with the exception of the firearm. The judge is presumed to know the elements of aggravated rape under La. Stat. Ann. § 14:42 and the elements

of armed robbery under La. Stat. Ann. §14:64. "[A]rmed with a dangerous weapon" is an essential element of armed robbery under La. Stat. Ann. §14:64. However, as discussed above, the prosecution argued to the judge that the petitioner could be found guilty of aggravated rape under La. Stat. Ann. § 14:42(A)(2) because he was "armed with a dangerous weapon." Therefore, the use of a weapon was independently probative to the aggravated rape charge and any objection was likely to have been futile. Other evidence linked to the Armed Robbery would likewise be relevant to the aggravated rape charge, such as the identification of the perpetrator as "Marice" by the other male.

Accordingly, counsel's failure to object did not amount to deficient performance. *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990) (counsel is not required to make futile motions or objections).

Even if the Court were to assume that the petitioner's counsel was deficient because he failed to object to other armed robbery evidence the petitioner has not identified,[19] the petitioner was not prejudiced by counsel's alleged deficiency because there was ample admissible evidence to support the petitioner's conviction for aggravated rape. Quoted by the trial court above, the First Circuit found that the petitioner's DNA on the vaginal swab, the victim's testimony that she had not engaged in consensual sex with the petitioner, and the victim's testimony that she had been raped at gunpoint was sufficient evidence sufficient to support the conviction of aggravated rape. Given the admissible and sufficient evidence to convict, the state court's conclusion that the petitioner also suffered no prejudice from his counsel's failure to object is neither contrary to

---

[19] Other evidence of armed robbery introduced at trial included the victim's credit cards, checkbook, drivers' license (Trial Court Record, p. 281), testimony from the victim that her purse and its contents had been stolen during the rape (Trial Court Record, pp. 275, 280-281), testimony from Sergeant Lynn Ferguson that the contents of the victim's purse had been recovered by the police after receiving a phone call from a member of the public (Trial Court Record, pp. 375-379).

nor an unreasonable application of federal law. The claim raised in R. Doc. 13 is without merit and should be dismissed.

## Certificate of Appealability

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether she would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the Court finds that reasonable jurists would not debate the denial of petitioner's application or the correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## **<u>RECOMMENDATION</u>**

It is recommended that the petitioner's application for habeas corpus relief be denied, with prejudice. It is further recommended that, in the event that the petitioner seeks to pursue an appeal, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on July 7, 2020.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**